| | |
|---|---|
| IN RE ADELPHIA COMMUNICATIONS CORPORATION SECURITIES AND DERIVATIVE LITIGATION | |
| *Island Partners, et al. v. Deloitte & Touche LLP* | Misc. Action No.:4:14-mc-97 |
| JAMES RIGAS, ZITO I, L.P., and ZITO MEDIA, L.P.,<br>                    Plaintiffs, | |
| v. | This action relates to Civil Action: 03 MDL 1529; 05-CV-2770 (S.D.N.Y.) (JMF) |
| DELOITTE & TOUCHE, LLP,<br>                    Defendant. | |

# PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL DEPOSITION TESTIMONY OF KAREN CHROSNIAK LARSEN, JAMES R. BROWN AND DOUG MALONE

Lawrence G. McMichael
Christie Callahan Comerford
Michael P. Gallagher
**DILWORTH PAXSON LLP**
1500 Market Street
Suite 3500 E
Philadelphia, PA 19102-2101
T: (215) 575-7000
F: (215) 575-7200

*Attorneys for Plaintiffs James Rigas, Zito I, L.P., and Zito Media, L.P.*

116482775_1

Plaintiffs, by and through their undersigned counsel, hereby submit the following Reply Memorandum of Law in further support of their Motion to Compel the deposition testimony of Karen Chrosniak Larsen, James R. Brown and Doug Malone (the "Motion to Compel").

I.     INTRODUCTION

In their Briefs in Opposition to the Motion to Compel, Larsen and Brown fall short of establishing that their submission of deposition testimony in this case poses a real danger of self-incrimination that warrants Fifth Amendment protection. Notably, none of the witnesses contest that they have information relevant to Plaintiffs' claims. Accordingly, this Court should grant Plaintiffs' Motion to Compel.

II.    ARGUMENT

   A.     Standard

"The central standard for the [Fifth Amendment] privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. U.S.*, 390 U.S. 39, 53 (1968). "[T]he claim of privilege cannot be sustained if the fear of self-incrimination rests on remote and speculative possibilities; the privilege protects only against real dangers." *United States v. Stelmokas*, No. 92-3440, 1993 U.S. Dist. LEXIS 5129 (E.D. Pa. April 16, 1993) (quoting *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472, 480, (1972)).

   B.     **This Court Should Compel the Deposition of Ms. Larsen.**

      1.     **The Central Justification for This Court's 2009 Orders No Longer Exists.**

Larsen argues that "[n]othing has changed since December 29, 2009 when Judge McClure denied BoA's motion to compel Larsen's deposition testimony." Larsen Response at

13. In fact, the Court's primary justification for the December 29, 2009 ruling no longer exists, presenting this Court with a starkly different question than that addressed in 2009.

In *Adelphia Recovery Trust v. Bank of Am., N.A.*, 4:09-MC-00139, 2009 WL 4268982, *6 (M.D. Pa. Nov. 24, 2009), Judge McClure declined to compel the deposition testimony of Larsen because the "the statute of limitations for at least one highly-relevant federal crime [had] not run." The Court ordered an *in camera* hearing to determine the scope of Larsen's Fifth Amendment privilege. After the *in camera* hearing, the Court issued its December 29, 2009 ruling that Larsen properly invoked her Fifth Amendment privilege. *Adelphia Recovery Trust v. Bank of Am., N.A.*, 4:09-MC-00139, 2009 WL 5214981 (M.D. Pa. Dec. 29, 2009). Thus, the sole reason for the *in camera* hearing, and the sole impetus for the December 29, 2009 opinion, was that the statute of limitations for at least one highly-relevant federal crime – bank fraud – had not run. The passage of over four years has removed this justification, as there is no dispute that, absent tolling, the limitations period has run for all relevant crimes that could possibly relate to the topics listed in the Agreements.

Moreover, a principal factor relied on by the Court in its December 29, 2009 was that the immunity agreement "was reached only between Larsen and the United States Attorney's Office for the Southern District of New York." *Id*. at *3. This is no longer a concern given that, regardless of the tolling issue, the running of the relevant limitations periods bars Larsen's prosecution in every jurisdiction outside of the Southern District of New York. Another factor relied on by the Court in its December 29, 2009 was that the immunity agreement provided immunity to Larsen only for crimes that Larsen had disclosed to government. *Id*. at *3. This is not a factor in the instant case because Plaintiffs have given assurance that they will limit their questions to those topics already disclosed to the government.

3

Thus, the question before this Court is far more narrow than that addressed in 2009: is the tolling provision in the immunity agreement, by itself, enough for Larsen to properly invoke her Fifth Amendment privilege?

## 2. **The Tolling Provision in Larsen's Immunity Agreement Does Not Pose a Real Danger of Self-Incrimination.**

Larsen argues that the tolling provision in her immunity agreement puts her in jeopardy of prosecution if she is forced to testify. In particular, Larsen argues that, if her "deposition testimony differs, for any reason, including but not limited to, the passage of time, the fading of memory, confusion or simple difference in phraseology, from the information and testimony that she provided pursuant to the [immunity agreement], she can be prosecuted." Larsen Response at 16. This is a strained interpretation of the immunity agreement, which provides:

> should it be determined that [Larsen] has given <u>false, incomplete, or otherwise misleading testimony or information</u>, or should she otherwise violate any provision of this Agreement, (Larsen) shall thereafter be subject to prosecution for any federal criminal violation of which this Office has knowledge, <u>including perjury and obstruction of justice</u>. Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against (Larsen), notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution.

Larsen Agreement at 2 (emphasis added).

The plain meaning of this provision is that relevant limitations periods will be tolled if the United States Attorney's Office for the Southern District of New York determines that Larsen provided it with false information. Thus, the only way that the tolling provision would create a real risk of prosecution is if Larsen had committed perjury when providing information to the government in 2002. If, during her deposition, Larsen is unable to recall events with particularity or if she describes events differently, this clearly would not lead the government, or any observer, to a determination that Larsen committed perjury. Larsen's implicit assertion that

"simple difference in phraseology" or the "fading of memory" will constitute perjury is, at best, a remote and speculative possibility. *See* Larsen Response at 16. Larsen asserts that any argument that "it is unlikely that a prosecutor would seize on such an inconsistency to prosecute Larsen" is speculative. *Id*. at 18. However, there is a significant distinction between estimating the likelihood of prosecution, and a realistic assessment of whether Larsen's testimony will reveal perjury that triggers the tolling provision. Larsen has failed to demonstrate any facts giving rise to hazard of the latter.

The very claim raised by Ms. Larsen was rejected in *In re Morganroth*, 718 F.2d 161, 170 (6th Cir. 1983 internal citation omitted):

> Public policy also requires that a witness bear the burden of establishing the foundation of the privilege beyond his mere "say so." Unless something more is required in situations such as the one on appeal where seemingly innocent questions exist in a setting presently devoid of incriminating overtones, witnesses such as Morganroth will be the final arbiters of the validity of their asserted privileges. A litigant's right to information must be balanced against a witness' constitutional right to invoke the privilege. Only where there is some real danger can the loss of information to a litigant or to the judicial system be justified. In addition, unless some additional showing beyond the mere assertion of the privilege is required, no witness would ever have to testify twice regarding the same subject matter because the possibility of perjury would always exist in theory. . . From the record on appeal, it appears that Morganroth has not met this burden of establishing a foundation necessary for the valid assertion of the privilege based on his alleged fear of a perjury prosecution.

Finally, Larsen explicitly admits that her interpretation of the immunity agreement would mean that it "forever tolled the running of any and all statutes of limitation that had not run as of October 2, 2002." Larsen Response at 15. Such a result is widely disfavored. *See Prudential Ins. Co. of Am. v. United States Gypsum Co.*, 828 F.Supp. 287, 300 (D.N.J. 1993) ("[T]he important public policies behind statutes of limitations are not best served if tolled indefinitely . . .") (quoting *Campbell v. Upjohn,* 676 F.2d 1122, 1128 (6th Cir. 1982)).

### C. Mr. Malone Should be Compelled to Testify

Plaintiffs' Motion should be granted as to Malone, who has not opposed it. Even if he had opposed the Motion, his immunity agreement is consistent with Ms. Larsen's and, therefore, for the reasons discussed above, he should be compelled to testify. A true and correct copy of Doug Malone's Immunity Agreement is attached hereto as "Exhibit A".

### D. Brown's Testimony Does Not Pose a Real Danger of Self-Incrimination.

Like Ms. Larsen and Mr. Malone, the statute of limitations has run with respect to any crimes relating to Mr. Brown's employment at Adelphia. Mr. Brown's carve-out for breach of his plea agreement is similar to Ms. Larsen's and Mr. Malone's immunity agreements. Because Plaintiffs will agree to only question Mr. Brown regarding the topics on which he has already provided testimony, he has no legitimate risk of revealing any additional crimes that were not previously disclosed to the government.[1]

Brown also argues that, because he has not yet been sentenced, his testimony "could elicit facts that bear on the severity of his sentence . . ." Brown Response at 2. However, Plaintiffs have agreed to restrict their deposition questions to topics that Brown previously addressed in his testimony on behalf of the government. Thus, there is no real risk that such questions will elicit any facts of which the government is not already aware.

Moreover, Brown entered his plea agreement in November 2002, more than eleven years ago, and still has not been sentenced. It is likely that such an excessive delay violates Brown's Sixth Amendment right to a speedy trial. *See Burkett v. Cunningham*, 826 F.2d 1208, 1221 (3d

---

[1] This argument is distinct from a waiver argument. Although Plaintiffs believe that Mr. Brown's selective invocation constitutes an abuse of his Fifth Amendment rights, the real issue is that because Mr. Brown has given such voluminous testimony on a variety of crimes he admits to committing and Plaintiffs' agreement to restrict their questioning to the topics as to which Mr. Brown has already testified, he has no legitimate fear of being prosecuted for a crime that he failed to disclose to the government.

6

Cir. 1987) ("We have held that inordinate and unexcused delays in post-trial or post-conviction proceedings may violate a convict's constitutional rights.") (citation omitted); *United States v. Campbell*, 531 F.2d 1333, 1335-36 (5th Cir. 1976) (holding that a four-year delay was "clearly unreasonable," but vacating and remanding for consideration of whether the delay resulted in any prejudice to the defendant); *see also id*. at 1335 ("A defendant need not necessarily show affirmative prejudice . . . to justify a finding by the court that there has been a denial of his right to a speedy trial."). Accordingly, any chance of eliciting testimony that could bear on Brown's sentencing is rendered even more remote by the real possibility that his sentencing may never occur.

Finally, unlike Ms. Larsen, Mr. Brown has not based his Fifth Amendment assertion on a fear of being prosecuted for perjury. Even if he had, for the reasons discussed above, such alleged, unsubstantiated fear would not justify assertion of his Fifth Amendment right.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Compel.

Respectfully submitted,

/s/ Christie Callahan Comerford
Lawrence G. McMichael
Christie Callahan Comerford
Michael P. Gallagher
DILWORTH PAXSON LLP
1500 Market Street
Suite 3500E
Philadelphia, PA 19102
(215) 575-7000
Dated: March 3, 2014            (215) 575-7200
Attorneys for Plaintiffs

7

116482775_1

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of March, 2014, I caused a true and correct copy of Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion to Compel to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action


Dated:  March 4, 2014                                             /*s/ Michael P. Gallagher*/

116482775_1