IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES RIGAS, ZITO I, L.P., and ZITO MEDIA, L.P. | : | Case No. 4:14-mc-0097 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| DELOITTE & TOUCHE, LLP | : | |
| | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
March 12, 2014

Before the Court is James Rigas, Zito I, L.P., and Zito Media, L.P.'s

(collectively, "Plaintiffs") Motion to Compel Deposition Testimony (ECF No. 1)

of non-parties Karen Chrosniak Larsen, James R. Brown, and Doug Malone

(collectively, the "Witnesses").  On February 24, 2014, the same day they filed the

instant motion, the Plaintiffs also filed a Motion for Expedited Consideration of

this issue (ECF No. 3).[1]  Following a telephonic conference held on February 25,

2014, United States District Judge Robert D. Mariani granted Plaintiff's Motion for

Expedited Consideration.  Judge Mariani ordered that the Witnesses file their

---

[1] The Plaintiffs filed the Motion for Expedited Consideration in consideration of the
March 7, 2014 discovery deadline in the main litigation taking place in the Southern District of
New York.

1

opposition to Plaintiffs's Motion to Compel by midnight on March 2, 2014, and that Plaintiff's file any reply by midnight on March 3, 2014 (ECF No. 8).

Witnesses Larsen and Brown, by and through their attorneys, each submitted briefs in opposition to Plaintiff's Motion to Compel on March 2, 2014 (ECF Nos. 12, 16).  Plaintiffs filed a Reply Brief on March 4, 2014 (ECF No. 14).  Witness Doug Malone has not filed a brief in the matter.  For the following reasons, a ruling on the Plaintiff's Motion to Compel Depositions (ECF No. 1) is delayed.  The Court will hold *in camera* hearings for each Witness to discern the appropriate scope of his or her Fifth Amendment privilege on these matters.

## I.   BACKGROUND

Plaintiff James Rigas ("Rigas") is a former officer and director of Adelphia Communications Corporation ("Adelphia").  Pls.'s Br. Supp. Mot. Compel 2, Feb. 24, 2014, ECF No. 2 [hereinafter Pls.'s Br.].  Prior to 2002, Rigas and his family were also the controlling shareholders of Adelphia and some affiliated organizations.  Adelphia filed bankruptcy in 2002 as a result of securities fraud and additional criminal activity committed by numerous other executive officers. Plaintiffs Zito Media, L.P. and Zito I, L.P. are the successors in interests to certain affiliates that Rigas and his family owned.  Id.

Plaintiffs are currently involved in litigation against Deloitte & Touche, LLP

("Deloitte") concerning Deloitte's alleged negligence and negligent

misrepresentation in conjunction with Deloitt's accounting, auditing, and SEC

disclosure services provided to Adelphia.  The lawsuit is one of numerous cases

transferred to the United States District Court for the Southern District of New

York as part of the multi-district litigation concerning Adelphia.

    The Witnesses are former employees of Adelphia and consequently have

information relevant to this case.  Karen Chrosniak Larsen ("Larsen") was

formerly employed by Adelphia as its Director of Investor Relations.  Larsen's Br.

Opp'n Pls.'s Mot. Compel 2, Mar. 2, 2014, ECF No. 12 [hereinafter Larsen's Br.

Opp'n].  James R. Brown ("Brown") and Doug Malone ("Malone") were also

officers of Adelphia.  Notably, both Brown and Larsen have provided substantial

testimony on events surrounding Adelphia in other cases.  Brown testified as a

witness at the criminal trial of former Adelphia officers, and he also testified in

civil proceedings on behalf of the United States Securities and Exchange

Commission.  Pls.'s Br., at 4.  Larsen similarly testified at the criminal trial.[2]  Id.

    Attempting to elicit the Witnesses's knowledge in the present litigation,

Plaintiffs issued subpoenas requiring the Witnesses to be deposed in Williamsport,

---

[2] Plaintiffs have in their possession the transcript of Larsen's eight days of testimony from the criminal trial in 2004, as well as transcripts from testimony of the other Witnesses. Pursuant to Federal Rule of Evidence 804, that testimony is available for use at trial in the case now pending between Plaintiffs and Deloitte.

Pennsylvania.  In response to the subpoenas, each Witness expressed the intention to assert his or her rights against self-incrimination afforded by the Fifth Amendment to the United States Constitution.  Subsequently, Plaintiffs and the Witnesses executed agreements to forego attendance at the scheduled depositions and proceed to litigating in this Court whether the Witnesses's invocation of the Fifth Amendment is appropriate.

Specifically, the agreements provide that the Witness plan invoke the Fifth Amendment in response to the following questions:

1. Your knowledge of any fraud during your tenure as an employee of Adelphia Communications Corp. ("Adelphia");

2. Your interaction with Deloitte while an employee of Adelphia;

3. Knowledge regarding information provided to Deloitte;

4. Deloitte & Touche's audit of Adelphia, including the status of its audit of Adelphia's 2001 financial statements as of March 27, 2002 and reasons for declining to issue an audit opinion letter with respect to those financial statements;

5. Operation of Adelphia's Millennium accounting system;

6. The substance of communications with Adelphia's Special Committee or the government;

7. Termination of your employment with Adelphia, including any agreements entered into with Adelphia concerning such termination; and

8. Content of prior testimony, if any, given by you after March 27, 2002 relating to members of the Rigas family and Adelphia.

Pls.'s Br., Ex. C.

The Court now considers the scope of the Witnesses's Fifth Amendment

protections in light of these circumstances.

## II.    DISCUSSION

### A.    Legal Standards

#### 1.    Procedure

Plaintiffs submit their motion pursuant to Federal Rules of Civil Procedure

37.[3]  Rule 37 concerns motions to compel discovery and provides that "[o]n notice

to other parties and all affected persons, a party may move for an order compelling

disclosure or discovery."   FED. R. CIV. P. 37.  Motions "for an order to a nonparty

must be made in the court where the discovery is or will be taken."  FED. R. CIV. P.

37(a)(2).  Plaintiffs's Motion is proper in this Court, because the Witnesses reside

in this district.

#### 2.    Fifth Amendment Standard

 The Fifth Amendment to the United States Constitution states, in pertinent

part, that "[n]o person . . . shall be compelled in any criminal case to be a witness

against himself . . . ."  A person may invoke the privilege against self-incrimination

---

[3] Plaintiffs issued subpoenas to each Witness pursuant to Federal Rule of Civil Procedure 45.

in a variety of settings, including civil proceedings, at an administrative or judicial hearing, or in a setting that is investigatory or adjudicatory.  Kastigar v. United States, 406 U.S. 441, 444–45 (1972).  Each Witness seeks to assert his or her Fifth Amendment rights against self-incrimination in the event they are deposed by the Plaintiffs.

A person claiming a privilege under the Fifth Amendment "must be confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination."  United States v. Doe, 465 U.S. 605, 614 n. 13 (1984) (citing Marchetti v. United States, 390 U.S. 39, 53 (1968)) (internal quotations omitted).  Nevertheless, "while the privilege protects an admission that on its own would support a criminal conviction, the privilege also protects admissions 'which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.'"  Adelphia Recovery Trust v. Bank of Am., N.A., 75 Fed. R. Serv. 3d 138, 2009 WL 5214981, *2 (M.D. Pa. 2009) (McClure, J.) (citing Hoffman v. United States, 341 U.S. 479, 487 (1951)).  Furthermore, "[i]t is settled by the overwhelming weight of authority that a person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding."  In re Neff, 206 F.2d 149, 152 (3d Cir. 1953).

As a general rule, a witness should be required "to answer questions only if

6

it is perfectly clear, from a careful consideration of all the circumstances in the case

that the answer cannot possibly tend to incriminate the witness." Nelson v.

Pilkington PLC (In re Flat Glass Antitrust Litig.), 385 F.3d 350, 371 (3d Cir. 2004)

(quoting United States v. Washington, 318 F.3d 845, 856 (8th Cir. 2003)) (internal

quotations omitted).  Nevertheless, "[t]he witness is not exonerated from answering

merely because he declares that in so doing he would incriminate himself—his say-

so does not of itself establish the hazard of incrimination."  Hoffman, 341 U.S. at

487.

Two situations in which the general rule is not operative are at issue in this

case.  First, "if a prosecution for a crime, concerning which the witness is

interrogated, is barred by the statute of limitations, he is compelled to answer."

Brown v. Walker, 161 U.S. 591, 598 (1896).  Second, "[s]uspects who have been

granted immunity from prosecution may . . . be compelled to answer; with the

threat of prosecution removed, there can be no reasonable belief that the evidence

will be used against them."  Hiibel v. Sixth Judicial Dis. Court, 542 U.S. 177, 190

(2004).

**B.     Fifth Amendment Application to Each Witness**

1. <u>Witness Larsen</u>

On October 2, 2002, Larsen agreed to assist the United States Attorney's Office for the Southern District of New York in the prosecution of numerous Adelphia executive officers and signed a non-prosecution agreement to that effect. Larsen's Br. Opp'n, at 3. The agreement provided Larsen neither transactional nor use immunity. Rather, the agreement promised that, so long as Larsen complied with all the terms of the agreement, she would not be charged in the Southern District of New York for her allegedly illegal activity within Adelphia. <u>Id.</u> at 4. The pertinent text of the agreement states she would not be prosecuted in the Southern District of New York for her:

> [P]articipation, from approximately February of 2000 through May 2002, in a scheme to defraud investors in, and creditors of, Adelphia Communications Corp. and its subsidiaries by, among other things, making false and misleading statements of material fact concerning Adelphia's subscriber base and other matters relating to Adelphia's business and falsifying Adelphia's books and records, to the extent any such crimes have been disclosed to this office as of the date of the signing of this Agreement.

Larsen's Br. Opp'n, Ex. A.

Importantly, the Agreement also provides that:

> It is understood that . . . should it be determined that she has given false, incomplete, or misleading testimony or information, or should she otherwise violate any

8

provision of this Agreement, the Witness shall thereafter be subject to prosecution for any federal criminal violation of which this Office has knowledge, including perjury and obstruction of justice. **Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Witness, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.**

Larsen's Br. Opp'n, Ex. A., at 2 (emphasis added).

United States District Judge James F. McClure, Jr. dealt with similar issues concerning Larsen, this Agreement, and the scope of her Fifth Amendment privilege in Adelphia Recovery Trust v. Bank of America, N.A., 75 Fed. R. Serv. 3d 138 (M.D. Pa. 2009). In that case, Larsen asserted her Fifth Amendment privilege in response to Bank of America's attempted deposition questions concerning her activities at Adelphia, because her counsel during the prior criminal trial advised she assert the privilege during subsequent civil depositions on the same topic. Larsen's Br. Opp'n, at 12–13. With respect to Larsen, Judge McClure declined to compel Larsen to testify because her agreement did not confer a broad grant of immunity to prosecution, and the statute of limitations for highly relevant

federal crimes had not yet run.[4]  Id.  Pertinently, Judge McClure emphasized the
fact that the Agreement only provided immunity "to the extent any such crimes
*have been disclosed to this Office as of the date of the signing of this Agreement*."
Adelphia Recovery Trust v. Bank of America, N.A., 4:09-mc-00139, 2009 WL
52149841, *3 (M.D. Pa. Dec. 29, 2009).

In the instant case, although the threat of prosecution from other United
States Attorney's Offices is lessened by the running of many pertinent statutes of
limitations, the threat of prosecution in the Southern District of New York is not
eliminated.  Larsen expresses a real concern that the Plaintiffs's questions may
explore facts concerning information provided to investment banks and implying
criminal implications that were not asked of her during her interviews in 2002 and
2003 and the 2004 criminal trial.

Furthermore, the Agreement specifies that all statements made by Larsen in
connection with the Agreement "shall be admissible in evidence in any criminal
proceeding brought against" her and that she can "assert no claim under the United

---

[4] Judge McClure also held an *in camera* hearing to discern whether Larsen's privilege
extended to each particular question asked of her.  See Adelphia Recovery Trust v. Bank of Am.,
N.A., 4:09-mc-00139, 2009 WL 5214981, *3 (M.D. Pa. Dec. 29, 2009).  After the hearing, it was
clear that Larsen's privilege extended to each question asked of her.  Due to the Plaintiffs's lack
of diligence in attending to this matter and the March 7, 2014 discovery deadline in the Southern
District of New York litigation, there is no time for a similar hearing in this action.  See Letter
Timothy Hoeffner Regarding Status Disc., Mar. 1, 2014, ECF No. 11.

States Constitution, any statute, Rule 11(e) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence or any other federal rule that such statements or any leads therefrom should be suppressed." Larsen's Br. Opp'n, Ex. A, at 2. This waiver, coupled with the fact that the deposition testimony may elicit new information or present past information in a different light, and that she still faces the prospect of prosecution for the crimes with tolled statutes of limitations, constitute sufficient "substantial and real . . . hazards of incrimination" to warrant Larsen's invocation of her Fifth Amendment privilege. <u>Doe</u>, 465 U.S., at 614 n. 13 (internal citations and quotations omitted).

The Plaintiffs's argument that Larsen's only risk of prosecution by the United States Attorney's Office for the crimes with statutes of limitations tolled by the agreement would be if Larsen committed perjury when providing information to the government in 2002 misses the mark. The Agreement only protects the information Larsen provided concerning crimes that had "been disclosed to this office as of the date of the signing of this Agreement." Larsen's Br. Opp'n Ex. A. Given Larsen's material involvement with Adelphia during its period of extensive criminal malfeasance, it is not an insignificant consideration that she has information outside the scope of her testimony under the Agreement that may implicate her in crimes not disclosed as of the signing of that Agreement. This

scenario is grounds for the invocation of Larsen's Fifth Amendment privilege.  <u>See</u> <u>Adelphia Recovery Trust</u>, 2009 WL 52149841, at *3.

Furthermore, testimony that differs in certain respects from Larsen's original testimony may induce the U.S. Attorney's Office to interpret, rightly or wrongly, that her original testimony was "false, incomplete, or otherwise misleading," in certain respects, without Larsen actively and willfully committing perjury now or in the past.  Larsen's Br. Opp'n, Ex. A.  The Plaintiffs's argument that it is unlikely that a prosecutor would seize on an inconsistency in Larsen's deposition answer to prosecute her is mere speculation. "[A] promise by the government not to use the testimony to be compelled, even if approved by a court, does not strip the recipient of that privilege."  <u>Matter of Special Fed. Grand Jury Empanelled Oct. 31, 1985</u> <u>Impounded</u>, 819 F.2d 56, 58 (3d Cir. 1987); <u>see also</u> <u>Nelson v. Pilkington</u>, 385 F.3d 350, 371 (3d Cir. 2004).  These facts and circumstances, taken together, establish Larsen's foundation for asserting her Fifth Amendment privilege to some areas of questioning beyond her mere "say so."  Her constitutional right to invoke the privilege must be respected.[5]

---

[5] Plaintiffs also allege that the agreement should not be read such that it forever tolls the running of any and all statute of limitations as of October 2, 2002, because such a result is disfavored by courts as a matter of public policy.  The question whether a perpetually tolled statute of limitations is sound policy is not before this Court. This Court considers only the plain words of the Agreement in answering the questions before it, which indicate the statutes of limitations remain tolled at this juncture.

Distilled to its basic elements, Plaintiffs's argument is inherently suspect.  In filing this motion to compel, for which the Plaintiffs were inexcusably dilatory, the Plaintiffs assert the Witnesses depositions are necessary and highly relevant.  The Plaintiffs state, however, they will confine their questions only to topics on which the Witnesses have already provided testimony.  Pls.'s Reply, at 3.  The Plaintiffs already possess the voluminous testimony Larsen provided in relation to the criminal trials a decade ago concerning the proposed area of discovery.  Given the Fifth Amendment implications of probing the same or related grounds, that testimony may have to suffice to some degree.

"The privilege must be sustained if it is not 'perfectly clear' that the witnesses's answers 'cannot possibly' have a tendency to incriminate."  U.S. v. D'Apice, 664 F.2d 75, 77 (5th Cir. 1981) (quoting Hoffman v. United States, 341 U.S. 479, 488 (1951)).  With respect to Larsen in the instant case, the issue is far from perfectly clear.  See Nelson, 385 F.3d at 371.  While it may be concluded that a real danger of incrimination exists, the Court must discern the exact scope of the Witness's Fifth Amendment privilege at an *in camera* proceeding.  See, e.g., Adephia Recovery Trust, 75 Fed. R. Serv. 3d 138, 2009 WL 4268982, at *9.

2.    Witness Malone

Malone is subject to precisely the same Agreement with the United States

Attorney's Office for the Southern District of New York as Larsen.  Accordingly,

the reasoning applied to Larsen applies to Malone as well.  It is not "perfectly

clear" that Malone's answers "cannot possibly have a tendency to incriminate."

D'Apice, 664 F.2d at 77 (internal quotations and citations omitted).  Consequently,

Malone shall attend an *in camera* hearing with the Court to discern the extent of

his Fifth Amendment privilege.

> 3.   Witness Brown

Brown seeks to assert his Fifth Amendment rights against self-incrimination

in response to the deposition subpoena because he still faces sentencing in an

ongoing and related criminal matter.  Brown was actively prosecuted for his role as

a former officer of Adelphia and pled guilty to multiple criminal counts on

November 12, 2002 in the Southern District of New York.  Brown's Br. Opp'n

Pls.'s Mot. Compel 2, Mar. 2, 2014, ECF No. 16.  Brown then testified as a

government witness at the trial of his co-defendants; he is still awaiting sentencing

on those charges.

The law is clear that, "[a]lthough the witness has pleaded guilty to a crime

charged but has not been sentenced, his constitutional privilege remains

unimpaired."  Mitchell v. United States, 526 U.S. 314, 326 (1999) (quoting J.

WIGMORE, EVIDENCE § 2279, at 991 n.1 (A. Best ed. Supp. 1998).  "Where the

sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony." Id.

Applying these principles, courts have consistently held that where a witness "at the time of his deposition" awaited "sentencing on criminal charges that related directly to the subject matter of these civil proceedings, the reasonableness of his assertion of the Fifth Amendment is obvious." Sterling Nat'l Bank v. A-1 Hotels Intern., Inc., 00-cv-7352, 2004 WL 1418201 (S.D.N.Y. June 23, 2004) (citing Mitchell, 526 U.S. at 325–26); see also Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067, 1075 (6th Cir. 1990) (citing numerous cases supporting the proposition that Fifth Amendment privilege continues in force until sentencing); U.S. v. Lowell, 649 F.2d 950, 955 (3d Cir. 1981) (stating that a defendant's refusal to testify after pleading guilty but awaiting sentencing was privileged); United States v. Domenech, 476 F.2d 1229, 1231 (2d Cir. 1973) (noting Fifth Amendment privilege continues after guilty plea).

Plaintiffs contend that Brown's pending sentencing should not be a material consideration because the delay of more than eleven years since his plea agreement in November 2002 likely violates Brown's Sixth Amendment right to a speedy trial. See, e.g., Burkett v. Cunningham, 826 F.2d 1208, 1221 (3d Cir. 1987). That question is not before this Court.

15

Consequently, because the law is clear that a witness who has pled guilty but is awaiting sentencing still enjoys the Fifth Amendment privilege against self-incrimination with respect to facts that may impact his sentencing, Brown may exercise his Fifth Amendment privilege in response to certain areas of the Plaintiffs's proposed questioning.  See, e.g., Mitchell, 526 U.S. at 326.  Brown shall also attend an *in camera* hearing to discern the proper scope of his Fifth Amendment privilege.

## III.   CONCLUSION

Consistent with the foregoing reasoning, a ruling on the Plaintiffs's Motion to Compel the deposition testimony of the Witnesses is delayed pending *in camera* hearings to determine, on a question-by-question basis, the scope of the Fifth Amendment privilege against self-incrimination to which Witnesses Larsen, Malone, and Brown are entitled.

16

An appropriate Order follows.

BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge