IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES RIGAS, ZITO I, L.P., and ZITO MEDIA, L.P. | : : : | Case No. 4:14-mc-0097 |
| Plaintiffs, | : : | |
| v. | : : | (Judge Brann) |
| DELOITTE & TOUCHE, LLP | : : : : | |
| Defendant. | : | |

**MEMORANDUM**
April 7, 2014

Before the Court is James Rigas, Zito I, L.P., and Zito Media, L.P.'s (collectively, "Plaintiffs") Motion to Compel Deposition Testimony (ECF No. 1) of non-parties Karen Chrosniak Larsen, James R. Brown, and Doug Malone (collectively, the "Witnesses"). On February 24, 2014, the same day that they filed the instant motion, the Plaintiffs also filed a Motion for Expedited Consideration of this issue (ECF No. 3).[1] Following a telephonic conference held on February 25, 2014, United States District Judge Robert D. Mariani granted Plaintiffs' Motion for

---

[1] The Plaintiffs filed the Motion for Expedited Consideration because of the March 7, 2014 discovery deadline in the central litigation taking place in the United States District Court for the Southern District of New York. On March 10, 2014, United States District Judge Jesse M. Furman granted the Plaintiffs' letter motion in his court and extended the discovery period to the earlier of: i) two weeks after any order compelling testimony of any of the four witnesses named in the letter motion; or, ii) April 28, 2014. Letter, Mar. 11, 2014, ECF No. 17.

Expedited Consideration. Judge Mariani ordered that the Witnesses file their opposition to Plaintiffs' Motion to Compel by midnight on March 2, 2014, and that the Plaintiffs file any reply by midnight on March 3, 2014 (ECF No. 8).

Witnesses Larsen and Brown, by and through their attorneys, each submitted briefs in opposition to Plaintiffs' Motion to Compel on March 2, 2014 (ECF Nos. 12, 16). Plaintiffs filed a Reply Brief on March 4, 2014 (ECF No. 14). Unrepresented Witness Doug Malone has not filed a brief in the matter.

The Court held sealed, *in camera* hearings with each of the three Witness on April 2, 2014. The Court explored the Witnesses' concerns with answering questions on the topics proposed by the Plaintiffs and examined each witness to elicit facts that establish their concrete fears of potential criminal prosecution resulting from compelled testimony.

For the following reasons, the Plaintiffs' Motion to Compel Depositions (ECF No. 1) is denied. The Witnesses are entitled to assert their Fifth Amendment privilege in response to the Plaintiffs' proposed areas of questioning.

I. BACKGROUND

Plaintiff James Rigas ("Rigas") is a former officer and director of Adelphia Communications Corporation ("Adelphia"). Pls.'s Br. Supp. Mot. Compel 2, Feb. 24, 2014, ECF No. 2 [hereinafter Pls.'s Br.]. Prior to 2002, Rigas and his family

were also the controlling shareholders of Adelphia and certain affiliated companies. Adelphia filed bankruptcy in 2002 as a result of securities fraud and additional criminal activity committed by numerous other executive officers. Plaintiffs Zito Media, L.P. and Zito I, L.P. are the successors in interests to certain affiliates that Rigas and his family owned. Id.

Plaintiffs are currently involved in litigation against Deloitte & Touche, LLP ("Deloitte") concerning Deloitte's alleged negligence and negligent misrepresentation in conjunction with Deloitte's accounting, auditing, and SEC disclosure services provided to Adelphia. This lawsuit is one of numerous cases transferred to the United States District Court for the Southern District of New York as part of the multi-district litigation concerning Adelphia.

The Witnesses are former employees of Adelphia who may have information relevant to this case. Karen Chrosniak Larsen ("Larsen") was formerly employed by Adelphia as its Director of Investor Relations. Larsen's Br. Opp'n Pls.'s Mot. Compel 2, Mar. 2, 2014, ECF No. 12 [hereinafter Larsen's Br. Opp'n]. James R. Brown ("Brown") and Doug Malone ("Malone") were also officers of Adelphia. Notably, both Brown and Larsen have provided substantial testimony on events surrounding Adelphia in other cases. Brown testified as a witness at the criminal trial of former Adelphia officers, and he also testified in civil proceedings on

behalf of the United States Securities and Exchange Commission. Pls.'s Br., at 4. Larsen similarly testified at the criminal trial.[2] Id. Malone has not previously testified in a proceeding, but he has provided voluminous information concerning his involvement at Adelphia during interviews with the United States Attorney's Office for the Southern District of New York.

Attempting to elicit the Witnesses' knowledge in the present litigation, Plaintiffs issued subpoenas requiring the Witnesses to be deposed in Williamsport, Pennsylvania. In response to the subpoenas, each Witness expressed the intention to assert his or her right against self-incrimination afforded by the Fifth Amendment to the United States Constitution. Subsequently, Plaintiffs and the Witnesses executed agreements to forego attendance at the scheduled depositions and proceed to litigating in this Court whether the Witnesses' invocations of the Fifth Amendment are appropriate.

Specifically, the agreements provide that the Witnesses plan to invoke the Fifth Amendment in response to the following questions:

> 1. Your knowledge of any fraud during your tenure as an employee of Adelphia Communications Corp. ("Adelphia");

---

[2] Plaintiffs have in their possession the transcript of Larsen's eight days of testimony from the criminal trial in 2004, as well as transcripts from testimony of the other Witnesses. Pursuant to Federal Rule of Evidence 804, that testimony is available for use in federal proceedings.

    2.      Your interaction with Deloitte while an employee of Adelphia;

    3.      Knowledge regarding information provided to Deloitte;

    4.      Deloitte & Touche's audit of Adelphia, including the status of its audit of Adelphia's 2001 financial statements as of March 27, 2002 and reasons for declining to issue an audit opinion letter with respect to those financial statements;

    5.      Operation of Adelphia's Millennium accounting system;

    6.      The substance of communications with Adelphia's Special Committee or the government;

    7.      Termination of your employment with Adelphia, including any agreements entered into with Adelphia concerning such termination; and

    8.      Content of prior testimony, if any, given by you after March 27, 2002 relating to members of the Rigas family and Adelphia.

Pls.'s Br., Ex. C.

The Court now considers the scope of the Witnesses' Fifth Amendment protections in light of these circumstances.

## II.   DISCUSSION

### A.   Legal Standards

1.  Procedure

Plaintiffs submit their motion pursuant to Federal Rules of Civil Procedure 37.[3]  Rule 37 concerns motions to compel discovery and provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."  FED. R. CIV. P. 37.  Motions "for an order to a nonparty must be made in the court where the discovery is or will be taken."  FED. R. CIV. P. 37(a)(2).  The Motion is proper in this Court because it is the court where discovery would be taken.  See id.

2.  Fifth Amendment Standard

The Fifth Amendment to the United States Constitution states, in pertinent part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  A person may invoke the privilege against self-incrimination in a variety of settings, including civil proceedings, at an administrative or judicial hearing, or in a setting that is investigatory or adjudicatory.  Kastigar v. United States, 406 U.S. 441, 444–45 (1972).  Each Witness seeks to assert his or her Fifth Amendment rights against self-incrimination in the event he or she is deposed by the Plaintiffs.

---

[3] Plaintiffs issued subpoenas to each Witness pursuant to Federal Rule of Civil Procedure 45, in the context of discovery under Federal Rule of Civil Procedure 26.

A person claiming a privilege under the Fifth Amendment "must be confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination." United States v. Doe, 465 U.S. 605, 614 n.13 (1984) (citing Marchetti v. United States, 390 U.S. 39, 53 (1968)) (internal quotations omitted). Nevertheless, "while the privilege protects an admission that on its own would support a criminal conviction, the privilege also protects admissions 'which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.'" Adelphia Recovery Trust v. Bank of Am., N.A., 75 Fed. R. Serv. 3d 138, 2009 WL 5214981, *2 (M.D. Pa. 2009) (McClure, J.) (citing Hoffman v. United States, 341 U.S. 479, 487 (1951)). Furthermore, "[i]t is settled by the overwhelming weight of authority that a person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding." In re Neff, 206 F.2d 149, 152 (3d Cir. 1953).

As a general rule, a witness should be required "to answer questions only if it is perfectly clear, from a careful consideration of all the circumstances in the case that the answer cannot possibly tend to incriminate the witness." Nelson v. Pilkington PLC (In re Flat Glass Antitrust Litig.), 385 F.3d 350, 371 (3d Cir. 2004) (quoting United States v. Washington, 318 F.3d 845, 856 (8th Cir. 2003)) (internal quotations omitted). Nevertheless, "[t]he witness is not exonerated from answering

merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination." Hoffman, 341 U.S. at 487.

Judge Cornelia G. Kennedy of the United States Court of Appeals for the Sixth Circuit elucidated a cogent summation of the law on this issue, writing:

> A witness presents sufficient evidence to establish a foundation for the assertion of the privilege and shows a real danger of prosecution if it is not perfectly clear to the court "from a careful consideration of all the circumstances in the case, that a witness is mistaken, and that the answer[s] cannot possibly have such a tendency to incriminate." Hoffman, *supra*, 341 U.S. 488, 71 S.Ct. 819. Stated differently, sufficient evidence is presented by a witness if a court can, by the use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution.

In re Morganroth, 718 F.2d 161, 169 (6th Cir. 1983).

Two situations in which the general rule is not operative are at issue in this case. First, "if a prosecution for a crime, concerning which the witness is interrogated, is barred by the statute of limitations, he is compelled to answer." Brown v. Walker, 161 U.S. 591, 598 (1896). Second, "[s]uspects who have been granted immunity from prosecution may . . . be compelled to answer; with the threat of prosecution removed, there can be no reasonable belief that the evidence will be used against them." Hiibel v. Sixth Judicial Dis. Ct., 542 U.S. 177, 190 (2004).

### B. Fifth Amendment Application to Each Witness

1. <u>Witness Larsen</u>

On October 2, 2002, Larsen agreed to assist the United States Attorney's Office for the Southern District of New York in the prosecution of numerous Adelphia executive officers and signed a non-prosecution agreement to that effect. Larsen's Br. Opp'n, at 3.  The agreement provided Larsen neither transactional nor use immunity.  Rather, the agreement promised that, so long as Larsen complied with all the terms of the agreement, she would not be charged in the Southern District of New York for her allegedly illegal activity within Adelphia.  <u>Id.</u> at 4. The pertinent text of the agreement states she would not be prosecuted in the Southern District of New York for her:

> [P]articipation, from approximately February of 2000 through May 2002, in a scheme to defraud investors in, and creditors of, Adelphia Communications Corp. and its subsidiaries by, among other things, making false and misleading statements of material fact concerning Adelphia's subscriber base and other matters relating to Adelphia's business and falsifying Adelphia's books and records, to the extent any such crimes have been disclosed to this office as of the date of the signing of this Agreement.

Larsen's Br. Opp'n, Ex. A.

Importantly, the Agreement also provides that:

> It is understood that . . . should it be determined that she has given false, incomplete, or misleading testimony or information, or should she otherwise violate any provision of this Agreement, the Witness

shall thereafter be subject to prosecution for any federal criminal violation of which this Office has knowledge, including perjury and obstruction of justice. **Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Witness, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.**

Larsen's Br. Opp'n, Ex. A., at 2 (emphasis added). The time period contemplated by the agreement covers the scope of her tenure with Adelphia. Larsen was not employed by Adelphia prior to the time period discussed in the agreement.

United States District Judge James F. McClure, Jr. dealt with similar issues concerning Larsen, this Agreement, and the scope of her Fifth Amendment privilege in <u>Adelphia Recovery Trust v. Bank of America, N.A.</u>, 75 Fed. R. Serv. 3d 138 (M.D. Pa. 2009). In that case, Larsen asserted her Fifth Amendment privilege in response to Bank of America's attempted deposition questions concerning her activities at Adelphia, because her counsel during the prior criminal trial advised her to assert the privilege during subsequent civil depositions on the same topic. Larsen's Br. Opp'n, at 12–13. Judge McClure declined to compel Larsen to testify because her agreement did not confer a broad grant of immunity to prosecution, and the statute of limitations for highly relevant federal crimes had

not yet run.[4]  Id.  Pertinently, Judge McClure emphasized the fact that the Agreement only provided immunity "to the extent any such crimes *have been disclosed to this Office as of the date of the signing of this Agreement*." Adelphia Recovery Trust v. Bank of America, N.A., 4:09-mc-00139, 2009 WL 52149841, *3 (M.D. Pa. Dec. 29, 2009).

In the instant case, although the threat of prosecution from other United States Attorney's Offices is lessened by the running of many pertinent statutes of limitations, the threat of prosecution in the Southern District of New York is not eliminated.  Larsen expresses a real concern that the Plaintiffs' questions would explore facts concerning information provided to the public and other institutions, and carry criminal implications which were not explored during her interviews in 2002 and 2003 and the 2004 criminal trial.

Furthermore, the Agreement specifies that all statements made by Larsen in connection with the Agreement "shall be admissible in evidence in any criminal proceeding brought against" her and that she can "assert no claim under the United States Constitution, any statute, Rule 11(e) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence or any other federal rule that

---

[4] Judge McClure also held an *in camera* hearing to discern whether Larsen's privilege extended to each particular question asked of her.  See Adelphia Recovery Trust v. Bank of Am., N.A., 4:09-mc-00139, 2009 WL 5214981, *3 (M.D. Pa. Dec. 29, 2009).  After the hearing, it was clear that Larsen's privilege extended to each question asked of her, as in the case *sub judice*.

such statements or any leads therefrom should be suppressed." Larsen's Br. Opp'n, Ex. A, at 2. This waiver, coupled with the fact that the deposition testimony may elicit new information or present past information in a different light, and that she still faces the prospect of prosecution for the crimes with tolled statutes of limitations, constitute sufficient "substantial and real . . . hazards of incrimination" to warrant Larsen's invocation of her Fifth Amendment privilege. Doe, 465 U.S., at 614 n. 13 (internal citations and quotations omitted).

The Plaintiffs' argument that Larsen's only risk of prosecution by the United States Attorney's Office for the crimes with statutes of limitations tolled by the agreement would be if Larsen committed perjury when providing information to the government in 2002 misses the mark. The Agreement only protects the information Larsen provided concerning crimes that had "been disclosed to this office as of the date of the signing of this Agreement." Larsen's Br. Opp'n Ex. A.

Given Larsen's material involvement with Adelphia during its period of extensive criminal malfeasance, it is not an insignificant consideration that she has information outside the scope of her testimony under the Agreement that may implicate her in crimes not disclosed as of the signing of that Agreement. Larsen demonstrated concrete facts in support of this contention. This scenario establishes the foundation for the invocation of Larsen's Fifth Amendment privilege. See

Adelphia Recovery Trust, 2009 WL 52149841, at *3.

Furthermore, the Plaintiffs plan to explore areas on which Larsen previously testified to explore potential inconsistencies, providing fertile grounds for her concern—particularly with a faded memory more than ten years after events and without access to the documents she possessed during the initial criminal trial. Testimony that differs in certain respects from Larsen's original testimony may induce the United States Attorney's Office to interpret, rightly or wrongly, that her original testimony was "false, incomplete, or otherwise misleading," in certain respects, without Larsen actively and willfully committing perjury now or in the past. Larsen's Br. Opp'n, Ex. A. The Plaintiffs' argument that it is unlikely that a prosecutor would seize on an inconsistency in Larsen's deposition answer to prosecute her is mere speculation. "[A] promise by the government not to use the testimony to be compelled, even if approved by a court, does not strip the recipient of that privilege." Matter of Special Fed. Grand Jury Empanelled Oct. 31, 1985 Impounded, 819 F.2d 56, 58 (3d Cir. 1987); see also Nelson v. Pilkington, 385 F.3d 350, 371 (3d Cir. 2004). These facts and circumstances, taken together with her testimony at the *in camera* hearing, establish Larsen's foundation for asserting her Fifth Amendment privilege to the Plaintiffs' proposed areas of questioning beyond her mere "say so." Her constitutional right to invoke the privilege must be

respected.

        2.     <u>Witness Malone</u>

Malone is subject to precisely the same Agreement with the United States Attorney's Office for the Southern District of New York as Larsen. Like Larsen, the time period contemplated by the agreement, from February of 2000 to May of 2002, effectively encompasses Malone's tenure as an Adelphia employee. Accordingly, the reasoning applied to Larsen applies to Malone as well. It is not "perfectly clear" that Malone's answers "cannot possibly have a tendency to incriminate." <u>D'Apice</u>, 664 F.2d at 77 (internal quotations and citations omitted).

Although Malone did not testify at any prior criminal proceeding, he divulged extensive information concerning his involvement with Adelphia in many interviews with the United States Attorney's Office for the Southern District of New York more than a decade ago. At his *in camera* hearing, Malone established a real fear of potential criminal jeopardy from rehashing similar topics in response to the Plaintiffs' proposed questioning—particularly with his understandably faded memory of events and his lack of access or familiarity with documents from his period of employment which would be central to the questioning. One need not enjoy an eminently robust "judicial imagination" to "conceive a sound basis for a reasonable fear of prosecution" in response to such queries. See <u>Morganroth</u>, 718

F.2d at 169. Accordingly, Malone's Fifth Amendment privilege must be respected.

### 3. <u>Witness Brown</u>

Brown seeks to assert his Fifth Amendment rights against self-incrimination in response to the deposition subpoena because he still faces sentencing in an ongoing and related criminal matter. Brown was actively prosecuted for his role as a former officer of Adelphia and pled guilty to multiple criminal counts on November 12, 2002 in the Southern District of New York. Brown's Br. Opp'n Pls.'s Mot. Compel 2, Mar. 2, 2014, ECF No. 16. Brown then testified as a government witness at the trial of his co-defendants; he is still awaiting sentencing on those charges.

The law is clear that, "[a]lthough the witness has pleaded guilty to a crime charged but has not been sentenced, his constitutional privilege remains unimpaired." <u>Mitchell v. United States</u>, 526 U.S. 314, 326 (1999) (quoting J. WIGMORE, EVIDENCE § 2279, at 991 n.1 (A. Best ed. Supp. 1998)). "Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony." <u>Id.</u>

Applying these principles, courts have consistently held that where a witness "at the time of his deposition" awaited "sentencing on criminal charges that related

directly to the subject matter of these civil proceedings, the reasonableness of his assertion of the Fifth Amendment is obvious." Sterling Nat'l Bank v. A-1 Hotels Intern., Inc., 00-cv-7352, 2004 WL 1418201 (S.D.N.Y. June 23, 2004) (citing Mitchell, 526 U.S. at 325–26); see also Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067, 1075 (6th Cir. 1990) (citing numerous cases supporting the proposition that Fifth Amendment privilege continues in force until sentencing); U.S. v. Lowell, 649 F.2d 950, 955 (3d Cir. 1981) (stating that a defendant's refusal to testify after pleading guilty but awaiting sentencing was privileged); United States v. Domenech, 476 F.2d 1229, 1231 (2d Cir. 1973) (noting Fifth Amendment privilege continues after guilty plea).

Plaintiffs contend that Brown's pending sentencing should not be a material consideration because the delay of more than eleven years since his plea agreement in November 2002 likely violates Brown's Sixth Amendment right to a speedy trial. See, e.g., Burkett v. Cunningham, 826 F.2d 1208, 1221 (3d Cir. 1987). That question is not before this Court and does not influence this ruling.

Brown demonstrated he was materially involved in criminal activity during his tenure at Adelphia. The Plaintiffs' proposed questions encompass areas in which Brown engaged in this activity, some of which he previously testified to and some of which has not been fully divulged. Consequently, because the law is clear

that a witness who has pled guilty but is awaiting sentencing still enjoys the Fifth Amendment privilege against self-incrimination with respect to facts that may impact his sentencing, Brown may exercise his Fifth Amendment privilege in response to the areas of the Plaintiffs' proposed questioning. See, e.g., Mitchell, 526 U.S. at 326.

## III. CONCLUSION

Each of the three Witnesses demonstrated concrete fears of potential prosecution if they are compelled to testify. It is far from "perfectly clear, from a careful consideration of all the circumstances in the case that the answer cannot possibly tend to incriminate the witness." Nelson, 385 F.3d at 371. Accordingly, each Witness is entitled to invoke his or her Fifth Amendment privilege against self-incrimination in response to the Plaintiffs' proposed questions. The Plaintiffs' Motion to Compel Depositions is denied.

An appropriate Order follows.

BY THE COURT:

<u>/s Matthew W. Brann</u>
Matthew W. Brann
United States District Judge